UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ANGEL NAVARRO

V. C. A. NO. 08-012ML

A. T. WALL, ET AL

**A. T. WALL'S AND JAMES WEEDEN'S MOTION TO DISMISS**

Now come Defendants A. T. Wall and James Weeden and hereby move this Honorable Court to dismiss Plaintiff's complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative for Summary Judgment in their favor as to all claims pursuant to Federal Rule of Civil Procedure 56, as and for the reasons proffered in the accompanying Memorandum.

DEFENDANTS,
By Their Attorney,

/S/ Michael B. Grant

Michael B. Grant
Deputy Chief Legal Counsel
R. I. Department of Corrections
40 Howard Avenue
Cranston, Rhode Island 02920
Bar No. 3864

**CERTIFICATION**

The undersigned hereby certifies that on this, the 24th day of April, 2008, I mailed a true copy of the within A. T. Wall's and James Weeden's Motion To Dismiss and accompanying Memorandum to Angel Navarro, P. O. Box 8200, Cranston, R. I. 02920.

/S/ Michael B. Grant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ANGEL NAVARRO

V. C. A. NO. 08-012ML

A. T. WALL, ET AL

## MEMORANDUM

Plaintiff has brought the instant action against A. T. Wall, II, Director of the Department of Corrections, James Weeden, Warden of the High and Maximum Security facilities and also against "8 staff of the prison." On the form complaint Plaintiff has filed with this Court, Plaintiff on page 2, III c, only identifies A. T. Wall and Warden Weeden as Defendants and then states "1. Captain from Max, a L.T. from Max, 2 C/Os from Max, 1 investigator from Max. 2. C/Os from Intake, and 1 psychiatrist from Intake." Plaintiff, through interdepartmental mail, served a copy of the complaint, a notice and acknowledgment of service form and a waiver of summons form on Defendants A. T. Wall and Defendant James Weeden. Plaintiff also served, through interdepartmental mail, Officer DiDonato, who is posted at Maximum Security and Steve Cabral, who is an investigator with the Department's Special Investigations Unit, despite the fact that these individuals are not identified as Defendants in the complaint.

## PLAINTIFF'S COMPLAINT

Plaintiff avers that on November 26, 2004, while confined, he was visited by an FBI female agent and a prosecutor at Maximum Security. Plaintiff alleges that the purpose of the visit was to interview him as he was going to serve as a "star witness against the sheriff." See Complaint P. 5. The parties discussed an up-coming trial that was scheduled for March 2005. Plaintiff alleges that two correctional officers began to tell inmates that Plaintiff was an FBI informant, thus, placing Plaintiff's life in danger. Plaintiff alleges that shortly after his meeting with the FBI agent and prosecutor, he

came into contact with a few inmates at recreation. One inmate told him that "their saying you are an FBI informer". See Complaint P. 5. The inmate indicated that a correctional officer told him that Plaintiff was an FBI informer. Plaintiff alleges that another inmate approached him in the shower and also indicated that a correctional officer, with white hair, was telling inmates that Plaintiff was an FBI and State Police informer. Plaintiff alleges that the inmate disclosed the officer's last name; however, Plaintiff failed to name the officer in his complaint.

The complaint alleges that in March 2005 he was taken to this Honorable Court to testify against the sheriff. On April 1, 2005, "everybody" was acting indifferent with the Plaintiff. Plaintiff alleges that one inmate looked at his identification and then left. Plaintiff alleges that on Saturday, April 2, 2005, while playing cards with a group of inmates, one inmate told the Plaintiff to watch his back "cause the guy that you are playing with is a traitor." Plaintiff alleges that on April 3, 2005, he didn't go to breakfast and that after recreation, he was in his cell; that a correctional officer "went and said something to me and he passed again and told me something else and left, then I told him, I want to see the nurse." See Complaint P. 5. Plaintiff alleges that he was taken to Rhode Island Hospital during his return to the ACI, he requested from the captain on duty that he be placed in protective custody out of fear for his life. Plaintiff alleges that he explained to the captain his situation and provided the captain with "the guys names that are trying to hurt me." Plaintiff alleges he was placed in segregation, however, when he arrived the same correctional officers that were involved earlier were posted in the segregation area. Plaintiff alleges that soon thereafter he was placed on the third tier and the officers then started talking to other inmates; that when the officer left the scene, inmates that were present started to yell and saying Plaintiff's name. "We'll get him in the morning." Out of fear, the Plaintiff alleges that he told an officer that he was hearing

voices telling him to kill himself, knowing that he would then be taken out of the facility and taken to the Intake Service Center Hospital, where he felt he would be safe.

See Complaint, P. 6. While at the Intake Service Center, Plaintiff alleges he was visited by a psychiatrist, who told him that if he stayed at Maximum Security, he would be hurt; that the psychiatrist ordered the nurse to give the Plaintiff some medication. While at the Intake Service Center, Plaintiff alleges that he was visited by an investigator from Maximum Security. Plaintiff explained to the investigator what was happening. Plaintiff alleges that he asked the investigator to direct the correctional officers to allow him to have a shower, but the investigator didn't “pay no mind." Plaintiff then alleges that an officer escorted him back to his cell and told him that he testified against the wrong sheriff. Plaintiff became scared and alleges that he didn't receive a shower for thirteen straight days, which worsened a rash the Plaintiff had been suffering from.

## CLAIMS

Plaintiff's first claim alleges a violation of his First Amendment rights of freedom of speech based on the fact that Plaintiff spoke to an FBI agent and prosecutor, and that he has the right, protected by the Constitution, to speak to whomever he wishes. Plaintiff alleges that the correctional officer who told him he testified against the wrong sheriff violated his First Amendment rights.

Plaintiff’s second claim alleges that two correctional officers from Maximum Security violated his Eighth Amendment rights by placing his life in danger, in that they labeled Plaintiff as an FBI informer to the inmate population. Plaintiff alleges that he suffered psychological injury due to fear of harm. Plaintiff also alleges that the two correctional officers at the Intake Service Center that were posted in the Hospital on first shift also violated his Eighth Amendment rights in that they told the Plaintiff he testified against the wrong sheriff, were telling inmates that he was an informer and failed to allow the Plaintiff to take his shower. Plaintiff alleges that the psychiatrist also violated

his Eighth Amendment rights in not ordering that the Plaintiff be given a shower; that doctors know that if an individual goes without a shower for "lots of days" they can get sick and catch any disease. Plaintiff alleges that as a result he got an infection from not showering for thirteen days. Plaintiff also alleges that the investigator violated his Eighth Amendment rights as he took no steps to prevent the Plaintiff from being sent back to Maximum Security.

Plaintiff's third claim alleges that his Fourteenth Amendment rights were violated by two correctional officers from Maximum Security and a Captain, lieutenant and investigator from Maximum Security, two correctional officers from the Intake Service Center and a psychiatrist from the Intake Service Center. Finally, Plaintiff alleges that his Equal Protection rights were violated in that correctional officers were informing the inmate population that the inmate was an informer and failed to protect him from harm.

## FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

In Rule 12(b)(6), motion should not be granted unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim, which would entitle him to relief. **Conley v. Gibson**, 355 U.S. 41, 45-46 (1957). (footnote omitted); **See** also, **Ferrante v. Moran**, 618 F. 2d 888-890 (1st. Cir. 1980). In making that determination, the complaint should be construed in the light most favorable to the Plaintiff. e.g., **Scheur v. Rhodes**, 416 U. S. 232, 236 (1974); **Dartmouth Review v. Dartmouth College**, 889 F.2d 13-16 (1st Cir. 1989). every doubt should be resolved in a way most beneficial to the plaintiff. E.g., **Klimas v. Intgernational Tel. and Tel. Corp.**, 297 F. supp. 937, 938 n.2 (D.R.I. 1969), and all well-pleaded allegations of the Plaintiff's complaint should be accepted as true. E.g., **Miree v. DeKalb County**, 433 U. S. 25, 27 n.2 (1977). That is particularly true when the complaint if filed by a pro litigant, whose pleadings are held to a somewhat less stringent standard than those drafted by lawyers. **Haines v. Kerner**, 404 U. S. 519 (1972).

**FEDERAL RULE OF CIVIL PROCEDURE 8(a)**

The Federal Rule of Civil Procedure 8(a) requires a plaintiff in a complaint to provide a short plain statement of their claims, showing that the pleader is entitled to relief. Plaintiff, in his complaint, provides a long-winded story of how correctional officers, lieutenants and captains at Maximum Security and at the Intake Service Center in notifying members of the inmate population that Plaintiff was an FBI informant resulted in the Plaintiff's life being placed in jeopardy. Plaintiff alleges that correctional officers told him that he testified against the wrong sheriff and then outlines several situations where inmates approached him indicating that correctional officers were spreading rumors that he was an informant. Plaintiff in the caption of the case has brought this action against A. T. Wall and James Weeden, Warden of the High and Maximum Security facilities. Although not named as Defendants, Plaintiff served, through interdepartmental mail, Steve Cabral, an inspector and Officer DiDonato, who is posted at the Maximum Security facility. Plaintiff, in his complaint, fails to reference, even a single act or omission, against either of the named Defendants (Wall and Weeden) or against either Cabral or DiDonato. Although the Plaintiff alleges that he was seen by a psychiatrist, who violated his rights, he fails to name or identify the psychiatrist. In fact the entire complaint fails to identify a single individual. There are no factual claims alleged against any of the Defendants or individuals served with the complaint. Under a Rule 12(b)(6) motion, "a reviewing court is obliged neither to credit bald assertions, periphrastic circumlocutions unsubstantiated conclusions or outright vituperation, nor to honor subjective characterizations, optimistic predictions, or problematic suppositions." **United States v. AVX Corp.**, 962 F.2d. 108, 115 (1st. Cir. 1992).

## SUPERVISORY LIABILITY

Defendants Wall and Weeden are supervisors at the A.C.I. A supervising person or entity cannot be held by vicariously liable under 42 U.S.C. § 1983 on a respondeat superior theory. **Maldonado-Denis v. Castillo-Rodriguez**, 23 F.3d. 576, 581 (1st. Cir. 1994). A supervisor may be liable under § 1983 only on the basis of his or her own act or omission. Id. A superior may be liable by establishing a policy or following a custom that leads to a challenged activity. Id. 582. A superior may also be liable if he had actual knowledge of the wrongful activity, or if he would have had such knowledge but for his deliberate indifference to this activity and had the authority to require changes, but did not do so. Id. The successful Plaintiff must show that the superior was deliberately indifferent that the conduct caused the subordinates actions violative of Plaintiff's constitutional rights. Id. This connection may be shown if the supervisor knew of, approved of or intentionally ignored that conduct. Id. This connection may also be shown by past history of such conduct on a wide-spread basis known to the supervisor and sufficient to alert him to current problems. Isolated instances of unconstitutional activity are insufficient to show deliberate indifference. Id. It is clear that the Plaintiff is simply suing Defendants Wall and Weeden on the basis that they are supervisors at the Department of Corrections. Plaintiff has completely failed to allege any connection between Defendants Wall and Weeden and the alleged unconstitutional conduct.

## RULE 56

Rule 56 of the Federal Rules of Civil Procedure provides the granting of summary judgment when the moving party has "shown that there is no genuine issue as to any material fact and that . . . [they are] . . . entitled to judgment as a matter of law." The moving party bears the burden of initially showing that there are no genuine disputes as to material facts in the case. **Adickes v. S. H. Kress & Co.**, 398 U. S. 144,

157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). The movant may discharge this burden by demonstrating that there is an absence of evidence to support the contentions on which the non-moving party would have the burden of proof at trial. **Celotex Corporation v. Catrett**, 477 U. S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party has come forward with such a showing, the burden shifts to the opposing party to establish that there are material facts in dispute. **Matsushita Electric Industrial Company v. Zenith Radio Corp.**, 475 U. S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The non-moving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Federal Rule of Civil Procedure 56(e). The non-moving must do more than simply show that there is "some metaphysical doubt as to the material facts." **Matsushita** at 596. Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. To avoid summary judgment, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. See, **Anderson v. Liberty Lobby**, 477 U. S. at 248 (1986) (interpreting the "genuineness" requirement).

## EXHAUSTION REQUIREMENT

Defendants are entitled to Judgment as a matter of law in that Plaintiff has failed to meet the exhaustion requirement of the Prison Litigation Reform Act of 1995 ("PLRA") Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended in scattered sections of 18 U.S.C., and 42 U.S.C.).

That statute in pertinent part provides:

> "No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."

42 U.S.C. § 1997 e)

"Prison conditions" under this provision include individual instances of medical mis-treatment or non-treatment. Plaintiff does not claim to have exercised any administrative remedies within any of the facilities comprising the Adult Correctional Institution. The United States Court of Appeals for the Seventh Circuit in **Pozo v. McCoughtry**, 286 F.3d 1022, 1025 (No. 7th Cir.) held to exhaust administrative remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require. The ordinary purpose served by such a requirement is to provide timely notice of the claim and an avenue for redress short of litigation. **McCarthy v. Madigan**, 503 U. S. 140, 145 (1992). Defendants refer this Court also to the affidavit appended herewith by Robert McCutcheon, Grievance Chairman for the Department of Corrections, confirming Plaintiff's failure to exhaust.

## CONCLUSION

The instant claims against Defendants Wall and Weeden are insufficient to show that they caused any of the alleged deprivations to the Plaintiff. Plaintiff failed to even mention Defendants Wall or Weeden in the factual portion of his complaint. The complaint is absolutely devoid of any reference to these Defendants, or for that matter, to any person. It is clear that the Plaintiff is simply suing Defendants Wall and Weeden on the basis that they are supervisors at the Department of Corrections. Plaintiff has completely failed to allege any connection between Defendants Wall and Weeden and the alleged unconstitutional conduct, and accordingly, all claims against the Defendants should be dismissed.

Respectfully submitted,

/S/ Michael B. Grant

______________________

Michael B. Grant
Deputy Chief Legal Counsel
R. I. Department of Corrections
40 Howard Avenue
Cranston, Rhode Island 02920
Bar No. 3864